Thank You, Your Honor. Carlo Brooks for Petitioner Okeke Kingsley Egungwu. Petitioner usually refers to himself as Kingsley, so if I'm going to say his name I think I will go with Kingsley. It's easier for me to pronounce. Your Honors, this is a case about an individual that arrived in the United States almost exactly 20 years ago today. Somebody with a United States citizenship, a United States citizen rather, family, approved I-130 visa petition, and yet he still finds himself in the juggernaut of a confusing intersection of statutes, regulations, and decisional authority. To be honest, there are so remanded in this case, and I don't begin every argument with that phrase, that I hardly know where to begin. If I had to choose the path of least resistance, I would argue that the board's contention that when an asylum applicant's attorney admits fault on the record for not attempting to amend, withdraw, or bolster a pro se or notario aided asylum application, if that's not clear prima facie, I see on its face, then I don't know what is. On that basis alone, this case really needs a do-over because so much time has passed. I mean, that piece, as I understand it, relates only to his role in the RUF and their to his disqualification as a member of a terrorist organization. Is that correct? Well, that is how the agency has characterized... Well, I'm asking you if it's correct. If it's wrong, why is it wrong? Well, in other words, when an... I'm sorry, getting an error here. When an immigration attorney receives a bare bones asylum application, or an application which appears to have been prepared by somebody else, and this is something that immigration attorneys see quite often from applications of that time, to then present that application in court and invoking the whistleblower case of Graba... Yeah, but I'm wondering, what does it have to do with... We have three problems here, as I understand it. We have the terrorist problem. We have the credibility, adverse credibility issue, which is partly about the terrorist problem, but it's about a lot of other things too. And the third one is the changed country conditions issue. So, all I'm saying is, as I understand it, the only part of the asylum application that was a problem for him was the statement that he was a member of the RUF and youth committee and was a recruiter and so on, he crossed that out. So, what else about that asylum application is pertinent here? Well... The rest of the credibility determination, adverse credibility. Right. I think that it just added issues that otherwise might not have been there. The proceedings were drawn out, the case was remanded, and then the petitioner found himself having to recall details about which he originally provided some information, although very little, at the airport in 2001. And these... At any time in which he provided slightly different information, these were then added to the list of so-called discrepancies, inconsistencies, which as, and I believe we were clear in the briefing on this matter, but I'll repeat it here, do not go to the heart of his claim, have nothing to do with either his well-founded fear or probability of torture. However, these sort of alleged discrepancies have accumulated now over the past 20 years, and the immigration judge and the board makes much hay of this. So, we have these allegations of discrepancies or inconsistencies, which allegedly go to the heart of his claim, along with a statement about an association with the RUF, which sort of takes on a life of its own. I propose he just backs that out. Let's assume that we don't... RUF determination isn't the reason why he, or denying him anything like that was insufficient. So, let's back that and just deal with the credibility determination without that. And most importantly, the change circumstances. The change circumstances determination is something which, so this court has held time and again that such a determination is not a purely discretionary determination, that it's a distinct analytical determination. And it cannot be made simply by pointing to the headlines and saying, oh, well, that war is over, therefore, no problem, let's send him back. Especially with respect to the torture convention, which this court has described as casting a wide net, every potential source or cause of torture must be analyzed. And here it's as though the agency sort of looks to what it interprets as Kingsley's original asylum claim, and then says, oh, well, that can't possibly lie now because the civil war has abated. So, that's actually another ground that would have required a much more thorough analysis and fact-finding than we have in this record, especially given that there were lots of discussions in this case, in this huge record, about the geography of Sierra Leone, its bordering countries, Guinea, Liberia. What is the border? When did it shift? Well, just recently, President Biden extended a deferral of enforced departure for Liberians, including stateless Liberians. So, if because of a border shift, Kingsley is a stateless Liberian, well, then that's something that would need to be determined. But it certainly can't be declared by fias. Right. Counsel, do you want to reserve the remainder of your time? Oh, yes. I'm sorry. I forgot to mention that. Yes. Thank you, Your Honor. Okay. So, Mr. Smulo? Yes. Good afternoon, Your Honors. Daniel Smulo on behalf of the acting attorney general. In this immigration case, the agency denied asylum and related relief because the petition was not credible. The terrorism bar applies. And in the third alternative, I guess, or in the second alternative, the country conditions had changed such that he no longer had a well-founded fear of persecution. The court will review each of these findings for substantial evidence, and they are all well supported by the record. With respect to the adverse credibility determination, Mr. Igungwu was unable to stick to a consistent story as to the reason for his persecution and why his parents were allegedly murdered by rebels. In 2001, at LAX, I believe, he swore to immigration officials that his parents were murdered because his father had been in the military or was in the military, and he gave the rebels a, quote, harsh time. In his written asylum application, and please bear in mind, Your Honors, that he does speak English. He repeated that about 18 times for every immigration court hearing, and he is an English speaker. He wrote, and it was a pro se application, that he was persecuted because he was Christian. He seemed to have abandoned his fathers in the military at that time. In 2007, he testified to a third reason, that his father, a successful business person, refused to give the rebels money for arms. So there are three reasons. This is a pre-Real ID Act case, so any adverse credibility determination must be on a basis that goes to the heart of the claim, and by any stretch, the reason for the alleged persecution goes directly to the heart of an asylum application and withholding as well. That alone suffices to support and uphold the adverse credibility determination, and for that reason alone, the court could and ought to deny the petition for review. He was, of course, also inconsistent as to his involvement with the RUF, Revolutionary United Front. At first, in his asylum application, he wrote that he, and it's a sworn application, of course, he wrote that he was a member of the organization in the youth wing. He was clear that there was no principal distinction between the for the RUF. He repeated that in his immigration court testimony in 2007, and notably, and as both the IJ and the board picked up on, it was only after the IJ denied his asylum application based on a terrorism bar that he changed tack and distanced himself from the RUF. In short, your honors, the adverse credibility determination is well supported by the record, and standing alone suffices to deny the petition for review. With respect to the terrorism bar, there's one point I want to draw to the court's attention because I believe it's a mistake in my brief, and I want to correct the mistake and apologize for it. The court, the government believes the court under the Kahn case does have jurisdiction to determine whether the undisputed facts in this render the or make the RUF a terrorist organization. That is reviewable. I wrote in the brief that under Kahn it does not, and that was my mistake. I would retract the argument and apologize for any confusion that it caused. I think for, you know, again, now that we realize there is jurisdiction for the court to determine that, certainly the record is replete with instances as to how the RUF satisfies the INA's definition of terrorism organization, and we would say substantial evidence well supports that as well as the finding that Mr. Igungwu either knew or should have known of its true nature. If there are no further questions, I would rest on the brief for those two reasons and ask the court to deny the petition. Can you comment on the change conditions, change country conditions, the suggestion in the case law that there has to be some, in the So case, there has to be some specificity, some individualized analysis, and I think what your opponent is arguing that the analysis here was not sufficiently individualized. I think that's his argument. I'd like you to respond to that. Your Honor, this case with respect to that is quite similar to Sal. You know, had there not been a very solid denial based on credibility and in the alternative a terrorism bar, perhaps the agency would have gone a little bit further in its denial based on change country conditions, but it was playing on this record and the finding was sufficient that the RUF was, the civil war was over. The RUF was long gone and to the extent that we could figure out what the petitioner was claiming for respect to his spirit of persecution, it did seem to be involving the RUF and because that had, that the State Department country conditions reports was fairly clear that that was no longer a factor, that organization was no longer a factor in Sierra Leone, then in the alternative, again, after the credibility, after the terrorism bar, then it would have found that that to change country conditions sufficed. As of when? I see country reports from 2005. As of when was the BIA finding that there was no, that door changed conditions? Judge, I'm not sure the board's decision makes it quite as explicit as that, but it was plain that there was remanded testimony and as of 2017, the board's decision was November of 2018. And as of that point, the board determined that the government had changed. The situation had changed dramatically based on what had occurred earlier in the mid to late 2000s. Are there country reports or anything else in the record after 2005? I'm sorry, Your Honor, I can't. Are there country reports or anything else in the record after 2005? I don't believe there are, but those country condition reports standing on their own suffice to show that the conditions had changed. And again, Your Honor, this is... In 2005, for example, the report does say something about former RUF rebels continue to hold persons, including women and children, as forced or common law spouses or as laborers. So in 2005, it appears there was still something going on here. Your Honor, that... We're now, you know, 16 years later, but all we've got is 2005. It doesn't seem to be the case, according to the country report, that the RUF wasn't bothering people anymore. I appreciate that, Your Honor, and I would have to go back and look at the record to see if there was anything more recent than 2005. But even if that were the case, where the applicant was uncredible, lacked credibility as to the reason for his persecution, and to the extent it could be tethered to the RUF's involvement, it was thin enough that it would support... No reasonable fact finder would be compelled to reverse the finding, which, of course, is a substantial evidence standard. There is reference... In the 2015 DOS report, there's also reference in the next paragraph about the 2012 elections and the fact that his father's resistance to the former president, Kabbah, the fact that he was no longer, nor his party, currently in power at the time of this decision. Does that give some recency to this, or what can you tell me about the 2006 reference to the 2015 and 2016 DOS report? I have forgotten that, Your Honor. Yes, page AR-152 is the IJ's remanded removal decision. So that shows that the IJ did, in fact, consider the more recent testimony. I apologize, or not the testimony, excuse me, the documentary evidence, so that that would provide further substantial evidence in support of the decision. If there are no further questions, Your Honor, again, this was a case where all three reasons, the lack of credibility, the terrorism bar, and the failure to otherwise prove eligibility insofar as the conditions had changed, all of which are supported by substantial evidence, I ask the court to deny the petition and submit on my briefs. Thank you very much, counsel. Mr. Brooks? Well, with respect to changed country conditions or country circumstances, I think one thing that is important to note here is that there's a lot of focus on Kingsley's putative grounds for protection, specifically under asylum. In other words, based on a protected ground, whether it's a particular social group, religious belief, political opinion, what have you. So the arguments with respect to country conditions go to whether or not a protected ground may still exist in the country today. Now, that's something that would need to be borne out by argument and evidence. However, withholding and torture convention are analytically distinct. In fact, this court is often referred to as torture convention as being an analytically distinct claim. So even if a putative protected ground arguably could no longer possibly lie in Sierra Leone today, that does not mean that the petitioner wouldn't have a valid torture convention putative ground based on the probability of torture or death. And that's just something that was simply not drawn out here at all with respect to, specifically with respect to the petitioner. So I believe that the agency did sort of skip a couple steps here. So for that reason, and for five or six other reasons that we're not going to have time to delve in today, but the immateriality of these alleged discrepancies and the presence of a terrorist bar, the case should be remanded. Thank you very much, counsel. Kingsley v. Wilkinson will be submitted. And this session of the court is adjourned for today. Thank you very much, counsel. Thank you.
judges: Wardlaw, Berzon, Chen